THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFFERY C. McKAY, Defendant-Appellant.

Second District   No. 2—94—0541

Opinion filed June 28, 1996.—Rehearing denied August 21, 1996.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael P. Coghlan, State's Attorney, of Sycamore (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Jeffery McKay, appeals the denial of his motion to reconsider the sentence imposed by the trial court following the entry of defendant's guilty plea to two counts of burglary (720 ILCS 5/19—1(a) (West 1994)). Defendant's guilty plea was entered on January 12, 1994. On March 18, 1994, after hearing the mitigation testimony of defendant and his mother, the trial court imposed two consecutive six-year terms of imprisonment. Defendant filed a timely motion to reconsider sentence (see 145 Ill. 2d R. 604(d)) which was denied on May 6, 1994. This appeal followed.

On appeal, defendant contends he was taking a psychotropic medication during the proceedings below and therefore was entitled to a fitness hearing (see 725 ILCS 5/104—21(a) (West 1994) (now codified, as amended, at 725 ILCS Ann. 5/104—21(a) (Smith-Hurd Supp. 1996))). The State counters we lack jurisdiction to consider defendant's contention because defendant failed to file a motion to withdraw his guilty plea and vacate the judgment before filing his notice of appeal. We note that in its appellate brief the State does not address the merits of defendant's contention. We remand for further factual findings.

The presentence report contains several indications defendant may have been receiving psychotropic medication. The report quoted defendant as describing his mental state as being " 'confused, meds problem [sic] depresion [sic], agigity [sic], feel sucidel [sic].' " Additionally, the report contains the following passage: "defendant stated since age 17, he's been in and out of hospitals, and halfway houses, i.e. Mercy Center, Aurora, Chicago Reed Hospital, Elgin State Hospital, a nursing home. Since November 1991, he's been seeing a psychiatrist for medication monitoring."

The mitigation testimony of defendant's mother, Marsha Early

(Early), also indicates defendant might have been receiving psychotropic medication. Early testified defendant suffered from schizophrenia, learning disabilities, borderline personality disorder, and dyslexia. Responding to defense counsel's question concerning whether medication had been prescribed for defendant, Early replied, "He's currently on Stelazine." Early stated Stelazine had been prescribed by "Dr. Kirts." Defense counsel then asked Early, "How does [defendant's] behavior differ when he's not on his Stelazine?" Early answered, "When he's taking the medication he can think clearly and he is able to communicate with people. When he's not taking it he's—he just doesn't communicate very well."

Defendant also gave testimony indicating he may have been receiving psychotropic medication. Defendant testified, "I think better" when taking the medication. He also stated, "I don't care about too much" when he doesn't take the medication. Defendant replied, "Yes" when asked whether he had been taking his medication since being incarcerated. On cross-examination, defendant stated he had been on medications since childhood and that physicians had changed the types of medications he took from time to time.

■ We first consider whether we lack jurisdiction over this appeal because defendant failed to file a motion to withdraw his guilty plea and vacate the judgment before filing his notice of appeal. Supreme Court Rule 604(d) provides in pertinent part:

> "*No appeal* from a judgment entered upon a plea of guilty *shall be taken* unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw his plea of guilty and vacate the judgment." (Emphasis added.) 145 Ill. 2d R. 604(d).

Our supreme court has stated the filing of a Rule 604(d) motion is a "prerequisite" (*People v. Frey*, 67 Ill. 2d 77, 85-86 (1977)), and a "condition precedent" (*People v. Foster*, 171 Ill. 2d 469, 471 (1996); *People v. Janes*, 158 Ill. 2d 27, 32, 34 (1994); *People v. Wilk*, 124 Ill. 2d 93, 105, 107 (1988); *People v. Stacey*, 68 Ill. 2d 261, 267 (1977)), to a defendant's right to appeal following the entry of a guilty plea. Nowhere in *Foster, Janes, Wilk, Stacey*, or *Frey* did the supreme court state the filing of a Rule 604(d) motion is required to vest the appellate court with jurisdiction over an appeal from a guilty plea. However, a number of appellate court opinions have construed the "condition precedent" language as indicating the filing of a Rule 604(d) motion is a jurisdictional requirement. See, *e.g.*, *People v. Clark*, 276 Ill. App. 3d 1002, 1005 (1995); *People v. Castillo*, 243 Ill. App. 3d 818, 820-21 (1993). On other occasions, *Wilk* and its progeny have been construed

as standing for the proposition that failure to file a Rule 604(d) motion results in the waiver of a defendant's right to appeal. See, *e.g., People v. Cochrane,* 257 Ill. App. 3d 1047, 1050 (1994); *People v. Young,* 250 Ill. App. 3d 55, 63 (1993).

A Rule 604(d) motion is not jurisdictional in the same sense as a notice of appeal is essential to vest the appellate court with jurisdiction over a civil appeal. Jurisdiction has been defined as a court's authority to "take cognizance of and decide cases" (Black's Law Dictionary 766 (5th ed. 1979)) and "exercise its power with respect to a particular matter" (Ballantine's Law Dictionary 690 (3d ed. 1969)). Notwithstanding its jurisdiction, an appellate court may find an issue is waived for a variety of reasons. See *People v. Mahaffey,* 166 Ill. 2d 1, 27 (1995) (trial counsel must make a contemporaneous objection to preserve alleged error for appellate review); *People v. Enoch,* 122 Ill. 2d 176, 185-86 (1988) (asserted error must be included in a post-trial motion); *People v. Almo,* 108 Ill. 2d 54, 66 (1985) (objection to jury instruction is waived if party does not object or tender an alternate instruction). The underlying purpose of waiver is to preserve finite judicial resources by creating an incentive for litigants to bring to trial courts' attention alleged errors, thereby giving trial courts an opportunity to correct their mistakes. See *In re Marriage of Schlam,* 271 Ill. App. 3d 788, 796-97 (1995). As such, the doctrine of waiver is an admonition to the parties, not a limitation on the appellate court's jurisdiction. *American Federation of State, County, & Municipal Employees, Council 31 v. County of Cook,* 145 Ill. 2d 475, 480 (1991).

We hold that *Foster, Janes, Wilk, Stacey,* and *Frey* mandate an appellate court find waiver if a defendant fails to file a Rule 604(d) motion. In *Wilk,* our supreme court—concerned Rule 604(d) was widely ignored by both courts and attorneys—determined defendants who fail to file a Rule 604(d) motion may not pursue a direct appeal; instead, the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1994)) is the appropriate avenue of relief for such defendants. *Wilk,* 124 Ill. 2d at 107-09. From this proposition it does not inexorably follow that an appellate court lacks jurisdiction over an appeal taken from a guilty plea in the absence of a Rule 604(d) motion. Rather, the *Wilk* line of cases and Rule 604(d) represent an instruction from the supreme court requiring the appellate courts to find defendants waive their right to appeal by failing to file a Rule 604(d) motion. *Wilk* and its progeny, therefore, withdraw from an appellate court not jurisdiction, but rather the decision whether waiver should bar the appeal of a defendant who has not filed a Rule 604(d) motion. See *Foster,* 171 Ill. 2d at 471 ("[t]hough the appellate court may have jurisdiction, Rule 604(d) precludes it from considering [an]

appeal *** unless the defendant first files with the trial court a written motion to either withdraw the guilty plea [citation] or reconsider the sentence" (emphasis omitted)). The supreme court—through its opinions and Rule 604(d)—has determined that in almost all instances waiver applies.

Our interpretation of the *Wilk* line of cases is supported by the practice of entertaining appeals from guilty pleas—even though no Rule 604(d) motion has been filed—if a defendant was not properly admonished under Rule 605(b). See 145 Ill. 2d R. 605(b). This practice is commonly referred to as the "admonitions exception" to Rule 604(d) waiver. If the failure to file a Rule 604(d) motion truly deprived an appellate court of jurisdiction, the court would be without power to decide an appeal under the "admonitions exception." The only course of action would be to dismiss the appeal. *Fligelman v. City of Chicago*, 264 Ill. App. 3d 1035, 1037 (1994); *People ex rel. Foreman v. Village of North Barrington*, 191 Ill. App. 3d 544, 553 (1989) (once a court determines it lacks jurisdiction, it must, *sua sponte*, dismiss the cause). The supreme court has expressly agreed with the "admonitions exception" as applied by several panels of the appellate court. *Foster*, 171 Ill. 2d at 472. In light of the foregoing, we hold that we have jurisdiction over defendant's appeal. We next address the issue of waiver.

■ If there is a *bona fide* question of defendant's competence—and, therefore, his ability to understand his rights and obligations under Rules 604(d) and 605(b)—we will not find defendant has waived his right to appeal because he failed to file a motion to withdraw his guilty plea and vacate the judgment. See, *e.g., People v. Williams*, 165 Ill. 2d 51, 62 (1995) (otherwise waived issues may be considered under the plain error rule if the evidence is closely balanced or the alleged errors were so egregious that they denied the defendant a fundamentally fair trial). In *Foster* the supreme court stated, "*Having been instructed* regarding Rule 604(d)'s mandates, a defendant cannot then argue procedural unfairness when he suffers the ramifications of his noncompliance." (Emphasis added.) *Foster*, 171 Ill. 2d at 472. The emphasized language indicates it is a defendant's failure to file a Rule 604(d) motion, despite a trial court's admonitions that in order to appeal he must do so, that results in waiver. Implicit in this statement is the assumption the defendant understands the admonitions. A defendant is unfit to stand trial if "he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *People v. Brandon*, 162 Ill. 2d 450, 456 (1994), citing 725 ILCS 5/104—10 (West 1992). It is difficult to imagine that a defendant who is unfit under section 104—10 could be presumed able to

comprehend the Rule 605(b) admonitions. In *Foster*, the supreme court stated, "Where [Rule 605(b)] admonitions have not been issued, it would violate procedural due process rights to hold a defendant responsible for noncompliance with the strictures of Rule 604(d)." *Foster*, 171 Ill. 2d at 473. By the same token, it would violate procedural due process rights to find a waiver under Rule 604(d) if a defendant cannot comprehend the Rule 605(b) admonitions. It is of no consequence to inform a deaf man of his rights through the spoken word. Because a *bona fide* doubt concerning defendant's competency would undermine the *Foster* rationale for waiver, we find the supreme court would not require us to impose waiver under *Wilk* or Rule 604(d). See *People v. Kinkead*, 168 Ill. 2d 394, 406-07 (1995) (a defendant may raise the issue of his entitlement to a competency hearing under section 104—21(a) for the first time before the supreme court).

■ Defendant contends his use of psychotropic medication during the proceedings below entitled him to a fitness hearing under section 104—21(a). At the time defendant pleaded guilty and sentence was imposed, section 104—21(a) provided in relevant part:

> "A defendant who is receiving psychotropic drugs or other medications under medical direction *is entitled to a hearing on the issue of his fitness* while under medication." (Emphasis added.) See 725 ILCS 5/104—21(a) (West 1994) (now codified, as amended, at 725 ILCS Ann. 5/104—21(a) (Smith-Hurd Supp. 1996)).

Normally, deciding whether there is a *bona fide* doubt of a defendant's competency to stand trial is entrusted to the discretion of the trial court. *E.g., People v. Murphy*, 72 Ill. 2d 421, 431 (1978); *People v. Stanhope*, 44 Ill. 2d 173, 179 (1969). However, the supreme court concluded the above-emphasized language expressed the legislature's determination that the fact a defendant is receiving psychotropic medication, in and of itself, creates a *bona fide* doubt of that defendant's fitness to stand trial. *Kinkead*, 168 Ill. 2d at 407, citing *People v. Gevas*, 166 Ill. 2d 461, 469 (1995). As such, "the broad discretionary standard ordinarily applied in deciding whether there exists a *bona fide* doubt yields when the accused is taking psychotropic medication under medical direction at the time of his trial or sentencing." *Kinkead*, 168 Ill. 2d at 407, citing *People v. Brandon*, 162 Ill. 2d 450, 460-61 (1994). Therefore, if the preamendment version of section 104—21(a) applies, a fitness hearing is mandatory and whether to conduct such a hearing is "not subject to the trial court's discretion." *Kinkead*, 168 Ill. 2d at 407. Finally, a trial court has a duty to investigate a defendant's fitness "where the record indicates that a defendant's use of psychotropic medication was proximate to the time he pleaded guilty and was sentenced." *Kinkead*, 168 Ill. 2d at 406, citing *Gevas*, 166 Ill. 2d at 469.

The presentence report indicates defendant had a history of mental illness and treatment attempts. Defendant was quoted as reporting confusion (possibly caused by his medications), depression, agitation, and suicidal thoughts. The report also revealed defendant had been "seeing a psychiatrist for medications monitoring" since November 1991.

Evidence presented at the sentencing hearing also indicates defendant may have been receiving psychotropic drugs. During her mitigation testimony, Early revealed defendant suffered from a variety of mental illnesses. Among these were schizophrenia. We note this illness is often characterized by a loss of contact with reality and a degradation or an absence of the ability to function in everyday life. Webster's Ninth New Collegiate Dictionary 1050 (1990). Early stated defendant was "currently" taking a drug called "Stelazine." During his testimony, defendant also stated he was taking medications. We hold the record contains ample indications defendant may have been taking psychotropic medication either during or proximate to the time he pleaded guilty and was sentenced. Under *Kinkead*, therefore, the trial court was on notice—or should have been on notice—it may have been obligated to conduct a fitness hearing pursuant to the preamendment version of section 104—21(a).

Because threshold factual findings—the answers to which are beyond the scope of this record—must be made to determine whether defendant was entitled to a fitness hearing, we decline to vacate the judgment against defendant. On remand, we direct the trial court to answer the following factual questions: (1) whether defendant was actually taking Stelazine or any other drug either during or proximate to the time he pleaded guilty and was sentenced; and (2) whether Stelazine—or any other drug defendant may have been taking under medical direction—is a "psychotropic drug" within the meaning of section 104—21(a). If both questions are answered affirmatively, we hold defendant was entitled to a fitness hearing under the preamendment version of section 104—21(a). In *Kinkead*, the supreme court stated it is impossible to conduct a meaningful fitness hearing retrospectively *nunc pro tunc* the time of the defendant's original trial and sentencing. *Kinkead*, 168 Ill. 2d at 408, citing *Gevas*, 166 Ill. 2d at 471. Therefore, if the trial court's factual findings reveal defendant was entitled to a fitness hearing, we direct the trial court to vacate the convictions against defendant. See *Gevas*, 166 Ill. 2d at 468, quoting *Brandon*, 162 Ill. 2d at 456 (" 'failure to observe procedures adequate to protect a defendant's right not to be tried while unfit deprives him of his due process rights to a fair trial' ").

■ In closing, we note the legislature has recently amended section 104—21(a). The amended provision provides:

"A defendant who is receiving psychotropic drugs under medical direction is entitled to a hearing on the issue of his or her fitness while under medication; *however, no hearing is required unless the court finds there is a bona fide doubt of the defendant's fitness.*" (Emphasis added.) 725 ILCS Ann. 5/104—21(a) (Smith-Hurd Supp. 1996).

The amended section 104—21(a) became effective on December 13, 1995. On remand, however, the preamendment version of section 104—21(a) applies to defendant. This is because the Statute on Statutes (5 ILCS 70/0.01 *et seq.* (West 1994)) provides in relevant part:

"No new law shall be construed to [affect] any penalty, forfeiture or punishment so incurred, or *any right accrued, or claim \*\*\* arising before the new law takes effect \*\*\*.*" (Emphasis added.) 5 ILCS 70/4 (West 1994).

The crucial determination is when defendant's right to a fitness hearing accrued. If defendant was taking a psychotropic drug during or proximate to either the time he pleaded guilty or was sentenced, his entitlement to a fitness hearing accrued on either January 12, 1994, or March 18, 1994, respectively. Therefore, because both dates are prior to December 13, 1995, the amended version of section 104—21(a) does not apply to defendant.

For the foregoing reasons, we remand the cause to the circuit court of De Kalb County for further factual findings and proceedings in accordance with this opinion.

Remanded with directions.

McLAREN, P.J., and INGLIS, J., concur.